[S. F. 22422. In Bank. Sept. 1, 1966.]

ROBERT K. BARBER, Petitioner, v. JACK G. BLUE,
as County Clerk, etc., Respondent.

Richard G. Logan and Gerald D. Marcus for Petitioner.

J. F. Coakley, District Attorney, Douglas R. Dunning, Assistant District Attorney, and Thomas J. Fennone, Deputy District Attorney, for Respondent.

MOSK, J.—Petitioner seeks a writ of mandate compelling the County Clerk of Alameda County to omit the office of superior court judge now held by petitioner from the ballot in the election to be held in November 1966. We have concluded that the petition should be granted, for the Constitution precludes an election for this office until 1968.

An election for the office now occupied by petitioner was last held in 1964. At that time Judge Homer W. Buckley was elected to a six-year term which commenced in January 1965. Judge Buckley died on December 25, 1965, and in January 1966 Judge Rupert W. Crittenden was appointed to succeed him. Since this vacancy in the office had occurred prior to January 1, 1966, Judge Crittenden was required by California Constitution article VI, section 8, to seek election in 1966; as is more fully discussed below, that section provides generally that appointees to the office of superior court judge shall stand election at the first general election after the first day of January next succeeding the accrual of the vacancy. Judge Crittenden was the only candidate to file for the office and, pursuant to article VI, section 6, of the Constitution, his name did not appear on the primary election ballot.[1]

Judge Crittenden died on May 8, 1966, and on July 15, 1966, petitioner was appointed to fill the vacancy. Had Judge Crittenden survived, he could have been challenged at the November election by any person who filed a petition signed by 100 registered voters (Const., art. VI, § 6); thus he cannot

---

[1]Article VI, section 6, provides that if an incumbent superior court judge in a county containing a population of more than 700,000 is the only person to file nomination papers, his name shall not appear on the primary ballot unless within 20 days after the final date for filing nomination papers there is filed a petition signed by 100 registered voters stating that a write-in campaign will be conducted. His name shall appear on the general election ballot, though it did not appear on the primary ballot, if such a petition is filed not less than 45 days before the general election.

be deemed to have been elected to a new term of office. (*Brown v. Hite* (1966) 64 Cal.2d 120, 127 [48 Cal.Rptr. 869, 410 P.2d 373].) The issue to be decided is whether these circumstances compel the office to appear on the ballot of the November 1966 election.

 Article VI, section 8, of the Constitution provides in relevant portion, "A vacancy in [the office of superior court judge] shall be filled by the election of a judge for a full term at the next general state election after the first day of January next succeeding the accrual of the vacancy; *except* that if the *term* of an incumbent, elective or appointive, is expiring at the close of the year of a general state election and a vacancy accrues after the commencement of that year and prior to the commencement of the ensuing term, the election to fill the office for the ensuing full term shall be held in the closing year of the expiring term in the same manner and with the same effect as though such vacancy had not accrued." (Italics added.)

The general rule stated in the section is that an appointee does not stand election in the year of the accrual of the vacancy which he is appointed to fill. If this rule is applicable to the present case, petitioner, who was appointed to fill a vacancy which occurred in May 1966, would not be compelled to seek election until the 1968 general election. Respondent contends, however, that the timing of the election is governed by the exception contained in the latter part of the quoted portion of article VI, section 8. He argues that because petitioner's predecessor, Judge Crittenden, was required to stand election in 1966 and could have held office pursuant to his appointment only until the elected candidate would have taken office in January 1967, his "term" would have expired at the close of 1966.[2] Respondent asserts that in these circumstances the exception is applicable and the election should proceed as if no vacancy had accrued. Therefore, the issue presented is whether the word "term" refers to the normal six-year term of superior court judges or to the tenure of an appointee, in this instance Judge Crittenden.

 Unfortunately, no uniform meaning has been assigned to the word "term" as it is used in the Constitution and

---

[2]Although Judge Crittenden's successor would not have taken office until the first Monday after January 1, 1967, it is clear that for the purposes of article VI, section 8, his tenure was "expiring at the close of" 1966. Under the alternative interpretation the exception would be applicable only between January 1 and the next succeeding Monday, and this brief period of time in early January could not possibly be described as "the close of" 1967.

related statutes. It is clear that "term" is not always to be equated with the tenure of the officer and a person may occupy an office without serving a "term of office." For example, *Pickens* v. *Johnson* (1954) 42 Cal.2d 399, 406 [267 P.2d 801], held that the assignment of a retired judge to hear cases does not extend his term of office. "It merely has the effect of vesting in him the powers of a judge of the superior court during the period specified in the assignment. . . ." (*Pickens* v. *Johnson, supra,* at p. 406; see *French* v. *Jordan* (1946) 28 Cal.2d 765, 770 [172 P.2d 46].)

.It has also been held that a term of office may commence even though the election at which the officer for the new term was chosen has been declared void. (*Holbrook* v. *Board of Directors etc. Irr. Dist.* (1937) 8 Cal.2d 158, 161 [64 P.2d 430].) On the other hand, statutes concerning the selection of municipal court judges suggest that a term may not commence unless some person has been elected to office. (*Brown* v. *Hite* (1966) *supra,* 64 Cal.2d 120, 126.) Other cases have interpreted the word "term" in still other ways (see, e.g., *Aggeler* v. *Dominguez* (1933) 217 Cal. 429 [19 P.2d 241]; *People* v. *Campbell* (1902) 138 Cal. 11 [70 P. 918]), and thus it is impossible to formulate any definition which will comprehend all of the uses made of the word. Therefore, it is necessary in each case to interpret "term" so as to effectuate the statutory scheme pertaining to the office under examination. (*Boyd* v. *Huntington* (1932) 215 Cal. 473, 479 [11 P.2d 383]; *People* v. *Morris* (1940) 41 Cal.App.2d 430, 433 [106 P.2d 635].) In doing so, we indulge in a presumption that constitutional and legislative provisions were not intended to produce unreasonable results. (*Aggeler* v. *Dominguez, supra,* at p. 434.)

 In the present case it is impossible to give total effect to the exception contained in article VI, section 8. The exception provides that the election shall proceed "in the same manner and with the same effect" as if no vacancy had accrued. However, Judge Crittenden died only 30 days before the 1966 primary election and after the time had expired for candidates to file for that election. (Const., art. VI, § 6; Elec. Code, § 6490.) Petitioner was not appointed until after the primary election had been held. Therefore, it is impossible to carry out the full elective process, of which the primary election, particularly for a nonpartisan office, is an integral part. (*Brailsford* v. *Blue* (1962) 57 Cal.2d 335 [19 Cal.Rptr. 485, 369 P.2d 13]; *Donnellan* v. *Hite* (1956) 139 Cal.App.2d 43, 47 [293 P.2d 158].) The closest approximation to the normal elec-'

tive process that respondent is able to suggest is a makeshift arrangement in which no primary election will be conducted and no candidate's name will appear on the November election ballot unless he qualifies as an independent nominee. (Elec. Code, § 6830 et seq.) In order to appear on the ballot, petitioner or any other candidate would be required to file nomination papers by September 23, 1966, signed by not less than 5 percent of the entire vote in the county in the last general election. (Elec. Code, § 6831.) In order to qualify as an independent nominee in Alameda County in 1966, 21,773 signatures would be required.

If the constitutional exception clause is applicable to the present situation, it is only because of the fortuitous circumstance that two incumbents have died within a five-month period. The rapid turnover in the office has left little opportunity for even the most conscientious voters to inform themselves of the qualifications of petitioner or of those who might oppose him. It is in such circumstances that the need for an orderly and complete elective process is particularly acute. Yet under respondent's interpretation of article VI, section 8, the result would be "a 'hit-and-miss' election in November at which any person obtaining a mere plurality of votes by the 'write-in' method or otherwise would be elected." (*French* v. *Jordan* (1946) *supra,* 28 Cal.2d 765, 774 [concurring opinion].)

The disruptive effects of this proposed interpretation of the exception are more easily discerned than are the benefits to be achieved by its application. The section does not manifest a general policy favoring precipitate elections, for the general rule stated in the section allows time for the institution of orderly elective procedures. The history of its provisions suggest that the sole purpose of the exception is to insure that no more than six years will elapse between elections. Originally, the relevant provisions were contained in section 6 of article VI, which stated that appointees to the office of superior court judge must in all cases stand election at the first general election following their appointment. However, a 1926 amendment to the Constitution transferred the provisions to section 8 and, as amended, that section provided that all vacancies should be filled "at the next succeeding general state election after the first day of April next succeeding the accrual of such vacancy. . . ." The argument submitted to the voters in 1926 stated that "If a vacancy occur after April first of an election year the time is too short

to circulate petitions and satisfactorily prepare for an election at the August primary, . . ."[3]

 Bearden v. Collins (1934) 220 Cal. 759, 762 [32 P.2d 604], decided that despite the wording of the 1926 amendment an election would be held in the year a vacancy accrued if it occurred in the expiring year of a six-year term. The court determined that the Constitution contemplated elections at regular intervals and stated that to defer the election "would be to arbitrarily add two years to the term of office held by [the deceased]." (Bearden v. Collins, supra, at p. 762.) Thus, it seems the court interpreted the words "term of office" as referring to the normal six-year term.

French v. Jordan (1946) supra, 28 Cal.2d 765, also concerned the effect on the elective process of a vacancy in the expiring year of a six-year term. The incumbent superior court judge had been elected to a new six-year term at the 1946 primary election but had died prior to the November election. The court held that the office should not appear on the November election ballot. It was determined that the election of the deceased at the primary had exhausted the elective process for that year, and the case might be distinguished from Bearden v. Collins and from the present action on that ground. However, the court did not rely on the distinction but instead overruled Bearden. (French v. Jordan, supra, at pp. 769, 770.) The decision also held that no new vacancy would be created at the time the new term would have commenced had the deceased incumbent survived. The court stated (at p. 770) that "any 'term' for which Judge Beardsley [the deceased incumbent] had been elected ceased to exist when he died. The vacancy in the office is a continuing one which lasts until a new six-year term shall commence in January 1949, for a person elected at the 1948 election." The court appears to have taken care to use the word "term" only with reference to a fixed six-year term.

It would seem that the exception with which we are now concerned was intended to restore the procedure set forth in Bearden v. Collins (1934) supra, 220 Cal. 759, and applies only if a vacancy accrues in the expiring year of a six-year

[3]A 1948 amendment advanced the determinative date to the first day of January. The argument to the voters reaffirmed the policy favoring a complete elective process. It stated, "The date of April 1 was selected because there would be time to circulate election papers and prepare for the direct primary election on the last Tuesday of August. . . . The date of the direct primary has been moved back to the first Tuesday in June and April 1 is far too late to permit candidates to file for the primary."

term. The indications to that effect in the prior cases and constitutional amendments are reinforced by an examination of the argument submitted to the voters concerning the 1952 amendment, to which we may refer for guidance. (See *Barrett* v. *Hite* (1964) 61 Cal.2d 103, 106 [37 Cal.Rptr. 320, 389 P.2d 944].) The argument states that under section 8 as it then read, ''the people are denied the right to vote for a superior court judge every six years if a vacancy occurs during the last year of an incumbent's term.'' After explaining the proposed changes the argument states, ''This is consistent with the present policy of filling the office of superior court judge by means of the elective process every six years and insures a greater degree of local control over public officers serving within a locality.'' Nothing in the argument suggests that the supporters of the amendment contemplated its application if a six-year term is not expiring.

The exception stated in article VI, section 8, applies to incumbents ''elective or appointive.'' Since appointees do not serve for any uniform period of time, the word ''term'' might be interpreted as referring to their tenure in office. However, the exception must be read in context and other portions of the section suggest a contrary interpretation. Thus, the first sentence provides that the ''term of office of judges of the superior court shall be six years. . . .'' In addition, the section provides, ''In the event of any vacancy, the Governor shall appoint a person to hold the vacant office *until the commencement of the term* of the judge elected to office as herein provided.'' (Italics added.) It appears that these portions of the section were drafted so as to avoid the denomination of an appointee's tenure as a ''term.''

We are of the opinion that the reference to appointive incumbents was included in the exception simply to insure that an election will be held every six years even when the vacancy in the sixth year is caused by the death or resignation of an appointee. We do not believe that the passing reference to appointees in the exception is sufficient in itself to overcome the clear implication in the language of other portions of the section and in its history that the word ''term'' was intended to refer to a fixed six-year period. ■ Therefore, the exception stated in article VI, section 8, is inapplicable to the present case, and we need not consider the issues which the parties raise concerning the nature of the procedure which it prescribes. Pursuant to the general rule of section 8, the next election for the office held by petitioner will be in connection with the 1968 election process.

Let a peremptory writ of mandate issue directing respondent, County Clerk for the County of Alameda, to omit from the ballot to be voted upon at the election to be held in November 1966 the office of judge of the superior court now held by petitioner. This decision is final forthwith.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.